Good morning, Your Honors. Counsel may it please the Court, I am Bryant Cheetah, and I represent Specialized Loan Servicing, LLC, and I will refer to Specialized Loan Servicing shorthand as SLS today. I have reserved three minutes for rebuttal, Your Honors. The District Court's award of summary judgment to Mr. Wirtz should be reversed for three reasons. First, SLS responded to each of Mr. Wirtz's qualified written requests and complied with RESPA. As the District Court properly concluded, the alleged error by a prior loan servicer – that was J.P. Morgan Chase Bank, N.A. – in misapplying Mr. Wirtz's loan proceeds has never been established. The District Court nevertheless utilized this supposed error as the foundation to conclude that SLS violated RESPA. This was error. Second, even assuming that SLS violated RESPA, the District Court… What does RESPA require? RESPA requires three things, Your Honor. A borrower may submit a qualified written request stating the reasons for the belief that the account is an error and provides sufficient detail to the servicer regarding other information sought by the borrower. The servicer can do one of three things in response. First, the servicer can make appropriate corrections in the account of the borrower. Secondly, after investigation, provide the borrower with a written explanation for why the servicer believes that the account is correct. Or thirdly, after investigation, the servicer can provide information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained. So there's no dispute that there's a qualified request? That is correct, Your Honor. Okay. What's missing in the other two? The qualified request, the record reflects that SLS did two of the things that it could do in response to the qualified written requests here, and there were a number of them ranging from October through December of 2013. This case is a bit unique in that it involves two different servicers, one being Chase, which serviced Mr. Wertz's loan. Was there an investigation done? Yes, there was. The record reflects that there was. Do you agree that the statute requires a reasonable investigation by the servicer? I think that standard is subject to debate. I know it's subject to debate, that's why I'm asking what your position is. Yes, pre-reg X, the 2014 amendments, post-reg X, there's no question that the standard is reasonable investigation. We're under the prior standard, which the cases we've cited in our brief said it's a procedural requirement that you make inquiry into the matter. And here the record reflects that. Your position is there was no requirement for specialized to do a reasonable investigation? I think we did a reasonable investigation, Your Honor. But as to the legal standard prior to the reg X change, I think the standard was a procedural one. And you'll see that in the cases. What was your investigation? Well, this is unlike those cases that are cited by Mr. Wertz, where, for example, in one of the cases, Chase just spit out a form, didn't look into the matter at all, attached some documents, and said, here you go. In the other one, Holland, that was Murray, in the other one, Holland, the borrower had identified a specific issue. I think you misapplied my first payment, identified it three times, and the servicer never looked into those issues. The facts here are quite different. The borrower identified three issues that he wanted SLS to look into. First, he wanted to know why SLS believed the account was transferred from Chase to SLS in a delinquent state in June of 2013. Second, he took issue with payments he insisted were made in February 2012 and February 2013. And third, he took issue with an October 2013 payment he contended was made. SLS looked into and addressed each of these inquiries. It provided Mr. Wertz with the information available to it. And it explained that it did not have additional information, which it was allowed to do under RESPA. That's what RESPA required, that's what SLS- You're saying that you didn't have to do what he subsequently did, which was find out about the mistake. And there's the linchpin of the error below. There's never been a mistake established. The district court, in its first order, said there's an error here that SLS failed to identify, and that's why it violated RESPA. There's no error to identify. I thought he said that you didn't do a reasonable investigation. And that would be true whether there was an error or not. You still have to do a reasonable investigation if we reject your procedural argument about the meaning of the word investigation. And so why wouldn't that be enough to show a violation, failure to do any investigation? Go ahead. If the standard is reasonable investigation, then I think reversal would be required for another reason, and that's that there was a fact issue as to whether there was a reasonable investigation. But under the facts of this case, which are a bit unique, there was this prior servicer, JP Morgan Chase Bank. This was within the one year period after Chase stopped servicing the loan. So Mr. Wertz had every right to go to Chase and ask for information, the information that SLS told him he didn't have. Remember, Mr. Wertz was focused on three things. But the obligation to do a reasonable investigation is on specialized, not on Wertz. The obligation for specialized is to state the reason for its belief that the account is correct. Yes, it has to investigate, and whether that's procedural or reasonable, I think we satisfied either inquiry. Or it can tell him that we don't have information. And here, this is actually a case where RESPA worked. He went to Chase and got the very information that SLS said it didn't have. SLS is expressly entitled to do that under the statute, to say, we don't have it. He sent qualified written requests to Chase, too, and got the very information it was that he was seeking. This is an instance where RESPA worked. And here's the thing, remember the three things that he was looking for, right? Why did you think my loan was delinquent at the time of transfer? There were these February 2013, 12 and 13 payments, and there was an October 2013 payment. SLS responded to all three of those inquiries. Here's what Mr. Wertz sent to Chase. This is a very important letter. It's April 15th, 2014, it's a qualified written request. It's located in the joint appendix at pages 54 to 56. In this qualified written request, Mr. Wertz identified for the very first time an allegation that Chase misapplied a payment on August 23rd, 2010. You will not find any reference to any alleged issues in 2010 in any of the correspondence to SLS. On the first page of that letter, that April 15th, 2014 letter, there's a bold header stating misapplication of proceeds from suspense account on principle. And then it goes on for four paragraphs as to why Mr. Wertz believes that that was an error. So you're saying a reasonable investigation in no wise required them to check with Chase? That Chase had the information he was looking for. I know, but that's not the question I asked. Are you saying that a reasonable investigation did not require them to ask Chase anything? Yes, because RESPA allows the servicer expressly to say we don't have the information. That is expressly allowed under the statute. And here, again, the borrower went to Chase. It got the information. The borrower never sent a similar letter to SLS, though, saying, hey, I've identified an issue from 2010. He never identified that issue for us, and that's what makes this case different. SLS thought it was investigating something else. The borrower has to give enough information as to what it thinks the error is. That's the Holland case, right? Three times. I think you misapplied my first payment. So you think when the statute says that the creditor can give an explanation of why the information request is unavailable, that means they don't have to investigate anything beyond what they have in their own files? I think that yes, that is what RESPA contemplates, is that there might be information we don't have. And we can tell you we don't have it. And we can tell you why we believe the account is correct. The case law does not require- Is unavailable or cannot be obtained by the servicer. Doesn't that imply that the servicer can obtain things that it doesn't have? Yes, your honor, it does. But here, the end result was that Mr. Wirtz did obtain the very information he was looking for. And the record also reflects, by the way, that SLS's standard procedure is not when it receives a new qualified written request to say, nope, we're not doing any further investigation. It's to reinvestigate, to relook at everything. And SLS's representative testified, this was in the image system, the prior records. And this would not have changed the outcome. It still showed that the account was delinquent. And again, the district court said, SLS, neither the district court nor SLS were in a position to determine whether the error occurred, neither of them. Chase was the only one who could make that determination. The district court expressly said that. And so, imposing a further duty on us to look beyond what was being requested by the borrower. When we did respond, and by the way, the 2012 and 2013 issues were resolved in SLS's favor. It was correct that those accounts were misapplied, that those payments were properly applied, excuse me. Well, if the court concludes that SLS did not do a reasonable investigation, do you lose then, or do you have any fallback argument? No, either I think it's a procedural requirement that we satisfied, or if it's a reasonable investigation, then you have to reverse and let us have our day in court. I know, I'm saying assume you lose on those issues. Do you lose the case, or do you have some fallback? No, I have fallbacks. Let me turn to the issue of damages. I thought you were going to argue damages and pattern or practice, but you've been focused on how you did such a reasonable investigation. I will turn to the issue of damages, your honor. The actual damages issue piece is actually pretty simple. Mr. Wertz paid $80 to obtain bank statements from his depository institution, ranging from January 16th, 2012 through November 17th, 2013. That's related to the disputed payments from February 2012 and 2013. SLS's position on those two payments was substantiated, and the district found no defect in SLS's response in that respect. There is no causal connection between this $80 charge and the violations the district court found. Mr. Wertz's lumping in the servicing records he obtained from Chase into the term bank statements. But he didn't pay anything for those, for those records he got from Chase, zero. The $80 issue relates to the 2012, 2013 bank statements. When we're talking about a 2010 issue, how could those bank records have anything to do with that? They can't. They don't go back that far. They were specifically related to issues in 2012 and 2013. And under the Eighth Circuit's Hintz decision, a RESPA claim cannot survive without the existence of actual damages. An award of statutory damages without actual damages would be unsupported, both by the plain language of the statute and by the Spokio decision. We're in a post-Spokio world. You can't have statutory damages alone based on a bare procedural statutory violation. The cases cited by Mr. Wertz predate Spokio, and they're simply an opposite in light of that decision. And I see I'm into my rebuttal time, but I would like to address briefly the pattern or practice of non-compliance. And that is, even if statutory damages were available in the absence of actual damages, SLS did not engage in a pattern or practice of non-compliance. That term is interpreted with its usual meaning, and that means an institutionalized standard, something that amounts to a standard or routine way of operating. Here at worst, there were two violations of RESPA when SLS tried to meet the substance of Mr. Wertz's request. One alleged servicing error from August 27th, 2010 has been identified as the sole error. And the district courts- Didn't Wertz say that there were five? Pardon? The other side represents there's five, right? The district court found two violations. He found that we failed to respond adequately to only two of the qualified written requests. It was November 8th and December 27th. He didn't find that we violated anything in response to the other three. So what you've got here are limited instances. If you find a violation of RESPA, you've got limited instances of non-compliance. That is not a pattern of practice or something pervasive at the institutional level. This is an instance where SLS is trying to get it right. If it misstepped, that is certainly not a pattern or practice of non-compliance. And statutory damages shouldn't be awarded. I'll reserve the rest of my time. Thank you, Mr. Chita. Mr. Eaton. Good morning, your honors. May it please the court. SLS simply failed to do its job here. RESPA is a consumer protection statute. And SLS, one of the basic requirements of SLS's job as a servicer is to respond to problems that a borrower is having to fix when he or she needs their loan. Fixed when there's a problem with it. In Wirtz's case, SLS didn't do this. The servicer has all the power here. A borrower is very limited in what they can do once they discover a problem with their loan. RESPA gives the borrower the ability to raise these issues with the servicer and have them addressed. Mr. Wirtz did his job here. He made every loan payment. When he discovered there was a problem, he brought it up to SLS through multiple phone calls and eventually through these qualified written requests. SLS completely failed to do its job. It did a cursory investigation of his first letter. It hardly responded to his second through fourth letters. Why would they be responsible for more than what, for information that they don't have in their possession? SLS is the loan servicer. This is their job to have this information. SLS, in their deposition, specifically testified that when a loan is transferred from one servicer to the other, they get the entire loan file. This includes the loan history. So SLS, when they received that first qualified written request, they only had two years of the loan history. They should have looked at that and gone back to Chase. They should have realized they didn't have a complete loan file. They should have gone back to Chase and obtained it from Chase. Instead, they responded to Mr. Wirtz and said, if you have proof you made these payments, please. Well, they said, we require that you provide this to us, and we require that you obtain the prior loan history from your prior servicer, which is really not his job. He shouldn't have to get his loan history, and he shouldn't have to prove up payments that he made. And so SLS really did have a duty to look beyond just the two years of this loan, when this was a 12-year-old loan. My concern is even if you're right about the failure to do a reasonable investigation, where are the damages and where's the pattern or practice? Because if I understand the statute correctly, you have to show pattern or practice to get the damages. I mean, yeah, to get the damages. Well, there are the actual damages, which the district court found is that- How are those damages, those $80, caused by the failure to investigate the Chase situation? I thought those records were related to the 2012 and 2013. The entries that your client was disputing, which actually, I gather, turned out to be correct. So there's two points there. First of all, the issue of these missed payments, if you look at the letter that SLS referred to in their briefing, where it discusses that. If you look at the next sentence after the one they quote in their briefing, it says, however, Mr. Wirtz then made extra payments to bring the loan current. So the missed payments don't come into play the way that SLS wants them to. The other issue is that SLS still required that Mr. Wirtz provide proof that he made all his payments, that was from the first letter and on. He needed those bank statements to prove that he made all of his payments. If he would not have provided those, then SLS still could have possibly found some discrepancy and So he still had to provide those. They were still part of the information SLS requested and part of the information SLS needed in order to do its investigation, or that they claimed they needed at least, and that goes. So going to the issue of when he sent those, The record is very clear that SLS did not review those documents, except for reviewing him for a loan modification, which was a complete. Well, hold on, you say you think the $80 are actual damages, but if there are no actual damages, then you would have to show a pattern of practice, right, to get statutory damages? Well, not necessarily in this case, but I'll speak to the pattern and I'll try to hit on both of those. I mean, there are really two questions there. If there are no actual damages, then can you get statutory damages at all? And then if you can, don't you have to show a pattern of practice to get them? So yes, Mr. Wirtz, still can get statutory damages without actual damages, and that would be. Why is that? I mean, the statute says any additional damages the court may allow. Why doesn't that imply that before you can get the additional statutory damages, you have to have some original actual damages? Because there's plenty of case law that, first of all, allow statutory damages without actual damages. In their reply brief, and just now, SLS briefly referred to the Spokio and Breitberg cases for the notion that when you have a violation of a bare procedural error, you can't get statutory damages. And the issue here is that the cases in the Spokio case and the Breitberg case, those refer to truly procedural errors where in Breitberg, the plaintiff had alleged that his, I believe, a cable TV provider had not destroyed some personally identifiable information. In Breitberg, it had to, or that was Breitberg. In Spokio, it had to do with the public information website that had some incorrect information on it. And the problem there is there was not individual or particularized harm, because anybody could claim that their TV provider didn't destroy information, anybody could plug in their name to the Spokio website. In this case, SLS's failure to investigate and failure to fix this problem affected Mr. Wertz individually. He wasn't claiming that there was just an underlying policy that SLS had that they're not complying with. He's saying, there is a problem with my account. This was his mortgage. This, for anybody, this is their biggest liability, at least for most people. There is an underlying expectation that stems from the mortgage documents, the mortgage and the note that SLS, that any mortgage servicer, gets things right, that when a borrower makes their payments, that they're applied correctly and that they're not going to have their mortgage servicer continually tell them that they're behind when they're not. So this is an individualized, it is a concrete harm. And so you may not be able to place a dollar amount on that, but it is an actual harm. There is a right, there is an inherent right that if a borrower makes their payments, they're going to be applied correctly. And this is an article three standing argument, I think, that you're making. That's what, isn't that what Spokio was about? And what I was asking is the meaning of the statute when it says any additional damages. In the case of a pattern or practice, doesn't the statute limit that to And it does not, and the best comparison to that is looking at the Fair Debt Collections Practices Act statute, which includes that same language about additional damages. But yet, the FDCPA, it's clearly established that plaintiffs in those cases can get statutory damages without actual damages. And it's a similar, the reasons there are similar to here. In the FDCPA, those claims are going to stem from unfair collection practices by a debt collector. There's a recognized inherent right to someone not being hounded by a debt collector. It's the same thing here. When I have a mortgage, I have an inherent expectation that I'm going to, my payments are going to be applied correctly, and if they're not, that when I approach my lender about this through RESPA, that they are going to conduct a reasonable investigation of this.  And they're going to correct my error once they discover it, once they review this. So that's why in cases like this, statutory damages would apply even without actual damages, because of that inherent right that the mortgage company gets this right. It may be different that, because there's another component to RESPA, to QWRs, where someone can just request information about their loan. There may be less of a reason to provide statutory damages if I want the name of the owner of my loan, their contact information, and I don't get their phone number, or something like that. But it's very different when it's an actual, a true, an error with the loan, a substantive issue with the loan. What do you think is the best case for you? I'm sorry, Your Honor? What do you think is the best case for your client? The best case? As in, to support Mr. Wirtz's position here? Yes, of course. So, the Murray case speaks very clearly about the damages issue. As far as pattern and practice goes, the case is very clear that this is in the briefing that allow for pattern and practice when there is multiple QWRs. And then, along those same lines, there isn't a bright line test for a pattern or practice violation. This was something that the district court looked at the entirety of the evidence, and determined that there was a pattern and practice. It is something that can be left to the discretion of the district court. And it is really the type of inquiry that is most appropriate for the district court. In closing, again, this is SLS's job. No matter what, they have to do an investigation that actually reflects the issue at hand. Even though this reasonable language was added later, they still have to do an appropriate investigation. They did not do that. Mr. Wirtz made repeated attempts to have this issue resolved. In the end, SLS didn't, even after Mr. Wirtz obtained all the information that SLS asked of him, SLS did nothing with it. And now he's basically stuck in limbo with his loan, unable to get it fixed. I respectfully request that the court affirm the district court's decision. Thank you, Mr. Eaton. Mr. Cheda, your rebuttal. Thank you, Your Honor. I have three brief points to make. The first comes back to the actual damages issue on the $80. Those statements would only relate to the 2012 and 2013 payment issues. And the district court found no RESPA violations with respect to SLS's response or anything else relating to those payments. Those were resolved in SLS's favor. I think I heard the argument that, well, I had to go get account records and you should have had those in your possession. But SLS would not have had Mr. Wirtz's depository bank account records in its possession. This is clearly an instance where SLS is entitled to say, we don't have that information. If you have something you'd like to tell us, we're all ears. The fact is, SLS looked at its information and concluded the payments were missed, and it told him so, and its position was substantiated. Those actual damages have no causal connection to the two RESPA violations that the district court found. Second point, all of the cases that are cited by Mr. Wirtz on the pattern or practice of noncompliance, those involve an utter failure to respond repeatedly. So five times, 631 times in one instance. The facts here are very different where the servicer is attempting to respond and is looking at information. That's not a pattern or practice of noncompliance. I see I'm out of time. Unless the court has additional questions. I see none. Thank you. Thank you both for your argument to the court this morning. We'll take your case under advisement, render decision in due course. Thank you.